IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RONALD WATKINS, *et al*.          :
                                  :
       v.                         :   CIVIL NO. CCB-07-2419
                                  :
MANUEL CASIANO, M.D., *et al*.    :
                        ...o0o...

## MEMORANDUM

On September 26, 2008, a jury found that the defendant, Manuel Casiano, M.D., was not negligent in his care and treatment of the plaintiff, Ronald Watkins. At trial, the plaintiffs alleged that Dr. Casiano negligently stapled Mr. Watkins's rectum shut during a transanal excision of a rectal polyp. Now pending before the court is the plaintiffs' motion for a new trial.

Up until the first day of trial, plaintiffs' counsel believed, based on Dr. Casiano's post-operative note, that Dr. Casiano used a particular brand of surgical stapler – an Endo-GIA – during the procedure. That brand of stapler, also referred to as "articulating," has a head that is capable of angling and rotating within the bowel. While plaintiffs were advised at the start of trial that the Endo-GIA stapler they brought as a demonstrative aid was not the exact type of stapler used by Dr. Casiano, it was not until his testimony on the last day of trial that they learned that the stapler he claimed to have used during the surgery – an Ethicon – was a linear stapler incapable of rotating inside the bowel.[1] Dr. Casiano testified that it would be impossible

---

[1] The plaintiffs deposed Dr. Casiano before trial, but did not show him the Endo-GIA stapler during the deposition.

1

to staple shut a bowel using either a linear or an articulating stapler.[2]

Claiming unfair surprise that prejudiced them at trial, the plaintiffs filed a motion for a new trial on October 8, 2008. The court ordered limited discovery in connection with the motion, which revealed that Mr. Watkins was billed by the hospital for two Ethicon staplers – a "roticulator" stapler and a "linear" stapler – and for two reloads for linear staples. (*See* Pls.' Supplemental Mot., Ex. 2.) Based on this evidence, the plaintiffs filed a supplemental motion for a new trial on April 9, 2009. The issues have been fully briefed, and oral argument was held on July 24, 2009. For the reasons stated below, the plaintiffs' motion will be denied.

## ANALYSIS

Federal Rule of Civil Procedure 59(a)(1)(A) provides that a court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]" Such a motion should be granted if "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998). It is well established

---

[2]Dr. Casiano testified at trial that he remembered the type of stapler he used because it was the only brand of stapler carried by the hospital where he performed Mr. Watkins's procedure. Post-trial discovery conducted by the plaintiffs has confirmed Dr. Casiano's testimony, and at the July 24, 2009 hearing, plaintiffs' counsel stated that Dr. Casiano's use of an Ethicon stapler is no longer in dispute. Dr. Casiano testified that he misidentified the brand of stapler in his post-operative note because the Endo-GIA stapler was the first of its kind and despite the different brands currently on the market "every surgeon just refers to them all as Endo-GIAs." (*See* Pls.' Mot. Ex. 10, Casiano Tr., at 101.) According to Dr. Casiano, referring to any stapler as an Endo-GIA is akin to "ask[ing] for a Kleenex. People know I mean a facial tissue." (*Id.* at 131.)

that Rule 59 allows for a new trial in the event of unfair surprise. *See Conway v. Chem. Leaman Tank Lines, Inc.*, 687 F.2d 108, 111 (5th Cir. 1982); *see also Twigg v. Norton Co.*, 894 F.2d 672, 675 (4th Cir. 1990). In *Twigg*, the Fourth Circuit stated that surprise warrants a new trial only if "it deprives the party of a fair hearing. The movant must show reasonably genuine surprise, which necessarily was inconsistent with substantial justice and which resulted in actual prejudice." *Id.* (internal citations and quotation marks omitted).

The plaintiffs contend that the defendant's assertion of a new theory of defense on the final day of trial resulted in actual prejudice because they were unprepared to rebut the defense. *See, e.g.*, *Twigg*, 894 F.2d at 675 (concluding the plaintiff's changing theory of why product at issue was defective asserted mid-trial resulted in actual prejudice because the defendant was unable to prepare a defense to rebut that assertion); *Conway*, 687 F.2d at 112 (allowing a new trial where previously unidentified defense witness testified to a new theory that tire marks in accident were made from a different vehicle). Specifically, the plaintiffs argue they were unfairly surprised by: (1) Dr. Casiano's claim that he used a linear stapler during Mr. Watkins's surgery, and (2) his claim that it would be impossible to staple shut a rectum using that linear stapler. They claim they were prejudiced by the inability to present their expert's opinion that a rectum could be stapled shut using either a linear or articulating stapler.

While the plaintiffs have shown that they were surprised by Dr. Casiano's testimony regarding his use of the Ethicon stapler, they have failed to demonstrate that they suffered actual prejudice. Both before and during trial, the defense's position, supported by Dr. Casiano's experts, was that it was not possible to staple shut a rectum even using the articulating Endo-GIA stapler, which Dr. Casiano's experts also assumed he had used. Despite the plaintiffs' burden to

3

prove their theory of liability, they offered no explanation during trial of how Dr. Casiano could have stapled shut Mr. Watkins's bowel with the Endo-GIA (rotating) stapler, stating they had no obligation to do so.

In defense of that trial strategy, the plaintiffs contend that "precisely how it happened was never an issue until Dr. Casiano denied that it was possible because he used a linear Ethicon stapler." (Pls.' Mem. at 15 n.6.) Attached to plaintiffs' motion seeking a new trial, however, is the Rule 26 report from John O'Connor, M.D., a defense expert, concluding that "[t]he transanal excision was done in the proper manner using the endoGIA as a linear stapler. There is no way that [Dr. Casiano] could have circularly stapled the colon shut at that time." (Pls.' Mot. Ex. 4 at 2.) Contrary to the plaintiffs' assertions, then, Dr. O'Connor's expert report suggested both that Dr. Casiano used the stapler in a linear fashion and that, as such, it was impossible to staple shut a bowel using that technique. In light of that, the plaintiffs should have been prepared to explain at trial their theory of *how* Mr. Watkins's rectum was stapled shut.

The plaintiffs' failure to offer evidence of how Dr. Casiano stapled the rectum shut left Dr. Casiano's contrary testimony unchallenged. As noted above, Dr. Casiano testified regarding the impossibility of stapling shut a rectum using either a linear or articulating stapler, suggesting the technique he used to remove the polyp – a transanal approach – would not allow it. For example, after describing the technique he used to remove the polyp, and in response to a question regarding his visualization of the staple line, he testified on direct: "You're looking at the staples. I don't see how, I mean using this technique, I don't see how you can staple the bowel shut." (Pls.' Mot. Ex. 10, Casiano Tr., at 45.) Moments later he explained why he believed it would be impossible: "[T]o staple shut the rectum, you basically need to staple like that, across

4

it. That's how you would staple shut a rectum, so nothing could get past it. To do that, you basically have to be outside the bowel, because it has to cross the bowel at a right angle." (*Id.* at 46.) Thus, while defense counsel's question referred specifically to the Ethicon stapler, Dr. Casiano's explanation suggests the general impossibility of stapling shut a bowel from the inside.[3]

Moreover, Dr. Casiano denied during cross examination that his explanation was specific to staplers incapable of rotating:

> Q: Now looking at the stapler that you demonstrated for the jury that was used in this case, this stapler has no rotating head, correct?
> A: That's correct.
> Q: I believe that you came up to the jury and you demonstrated for them that it was impossible for you to clip the wall or get two walls together because the head doesn't rotate. Do you recall that testimony?
> A: Well, actually the reason is because you're going up the length of it. ... The only way I think you can staple off a bowel is it has to be across.
> Q: Okay. I'm just asking if you remember you demonstrated for these jurors ... the fact that the head doesn't rotate so you can't catch two walls of the bowel. Do you remember that testimony?
> A: I remember that the head doesn't rotate – that the head doesn't articulate.
> Q: Now the Endo-GIA stapler ... this head actually does rotate side to side, doesn't it.

---

[3]While Dr. Casiano's explanation included a reference that the stapler he used "can't get sideways," in context, this statement also refers to the mechanics of his particular technique: "If you're working up this way through the anus transanal, this is all you can move your stapler. You can't get sideways. I just don't see how you can staple shut the bowel from the inside." (*See* Pls.' Mot. Ex. 10, Casiano Tr., at 46.)

Moreover, in response to a juror's question asking whether "the two sides of the firing part of the staple gun come in contact with two opposing walls of the rectum[,]" Dr. Casiano responded: "The jaws can separate about this much, a little under a centimeter. To get the two opposing walls of the rectum in the jaws at the same time, they would have to be that close together. So if you've got a three centimeter wide rectum, I don't see how you can get this wall and this wall both at the same time in the instrument from the inside." (*Id.* at 69-70.) While Dr. Casiano was describing the Ethicon stapler he claimed to use during the procedure, the answer is not limited to a linear stapler. The same explanation applies to a rotating head; even if fully articulated, the jaws of the stapler would still not be wide enough to staple shut completely a three-centimeter wide bowel.

5

    A: Yes.
    Q: So if you're in the colon, it can go all the way from one end to the other?
    A: No.

(*Id.* at 131-33.) This exchange further indicates that Dr. Casiano's answer regarding the impossibility of stapling shut a bowel using the technique he described – going up the length of the bowel internally – is the same regardless of whether the stapler head can rotate.[4] Moreover, during redirect, defense counsel inquired whether "the same impossibility of suturing closed the rectum would be the same with either instrument," which Dr. Casiano answered in the affirmative. (*Id.* at 180.)

    The plaintiffs offered no rebuttal testimony to contradict Dr. Casiano's assertions. Although the plaintiffs contend that it would have been impractical to offer rebuttal evidence on this point because their expert witness, Charles Goldman, M.D., resided in Iowa and was not available to be recalled to testify the same day as the defense concluded its case, as discussed above, the plaintiffs were on notice of and should have been prepared to rebut the defense's assertion that even using the articulating stapler it was not possible for Dr. Casiano to staple shut Mr. Watkins's rectum during the transanal procedure. More importantly, under the circumstances, the plaintiffs could have requested a brief continuance to consult with Dr. Goldman, ask him to return to Maryland, or arrange to offer his rebuttal testimony via video conference. There is nothing in Dr. Goldman's latest affidavit, attached to the plaintiffs' motion

---

[4]The plaintiffs contend that a jury question submitted during Dr. Casiano's testimony – inquiring whether "the end of the staple gun ha[s] any adjustments" – demonstrates that the difference between the staple heads was a significant issue in the case. Considering, though, that the plaintiffs failed to provide a rationale for how even an articulating stapler could staple a bowel shut during a transanal procedure, the jury's interest in the differences between the two staplers is insufficient to warrant a new trial.

for new trial, that he could not have offered had he been recalled to testify in rebuttal.

Relying on Dr. Casiano's testimony and that of his experts, the jury could have reasonably concluded that stapling shut the rectum with either a linear or articulating stapler was impossible using the transanal technique Dr. Casiano described in his post-operative note and at trial. The plaintiffs failed to offer an alternative explanation through direct or rebuttal testimony. While the type of stapler used by Dr. Casiano came as a surprise, the defense's overarching theory – that Dr. Casiano could not have stapled shut the bowel during the transanal excision – did not change. Unlike *Twigg* and *Conway* where the surprise testimony provided an entirely new theory, Dr. Casiano's did not.[5]

Accordingly, the plaintiffs' motion for a new trial will be denied. A separate order follows.

  August 17, 2009                                                      /s/
Date                                                            Catherine C. Blake
                                                                  United States District Judge

---

[5] While newly discovered evidence demonstrates that Mr. Watkins was billed by the hospital for both a linear and an articulating Ethicon stapler (*see* Pls.' Supplemental Motion Ex. 1-3), the plaintiffs' contention that this new evidence further supports their motion for a new trial is unpersuasive. At the outset, the only staple reloads used were for the linear stapler. Further, in an affidavit, Dr. Casiano denies using the articulating stapler, claiming that it is too large to fit within a patient's rectum (Def.'s Supplemental Opp. Ex. A.), and the plaintiffs failed to rebut this claim in their reply memorandum or at the July 24 hearing. Moreover, as discussed above, Dr. Casiano's trial testimony described the impossibility of the plaintiffs' theory regardless of the type of stapler used, and the plaintiffs failed to offer an alternative explanation at trial. The court notes that any shadow cast on Dr. Casiano's credibility from his failure to identify the Ethicon stapler's particular model number is insufficient to warrant a new trial.